1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

9
10

SUBSEA ROBOTICS, LP,                          No. 2:13-cv-01833-MCE-EFB

11

            Plaintiff,

12

      v.                                                    **MEMORANDUM AND ORDER**

13

SCHILLING ROBOTICS, LLC,

14

            Defendant.

15
16
17
18

 Plaintiff Subsea Robotics, LP ("Subsea"), a New Zealand limited partnership,

19

brought this action in state court petitioning for the court to compel Defendant Schilling

20

Robotics, LLC ("Schilling"), to arbitrate a contract dispute.  Subsea also applied for

21

certain prejudgment remedies including a writ of attachment against Schilling's assets.

22

Thereafter, Defendant Schilling removed the action to this Court on the basis of this

23

Court's diversity jurisdiction pursuant to 28 U.S.C. § 1441.  ECF No. 1.  Presently before

24

the Court are the parties' cross-motions for Prejudgment Writs of Attachment.  ECF Nos.

25

12, 17.  For the reasons set forth below, the Court DENIES both motions.[1]

26

///

27

///

28

---

[1] Finding that oral argument would not be of material assistance, the Court previously ordered this matter submitted on the briefs.  E.D. Cal. L.R. 230(g).

**BACKGROUND**

Subsea is a provider of underwater robotic services, Decl. Wander Luiz Ferreira del Almedia ("Decl. Ferreira") ¶¶ 1–3, ECF No. 13-9, and Schilling is a manufacturer of underwater robotic machines, also known as remotely operated vehicles ("ROVs"), Decl. Paul Whalen ¶¶ 1–4, ECF No. 18.  In 2011, Subsea bid on a contract involving a subcontractor of Petrobras (a Brazilian semi-public multinational energy corporation), and later on a contract with Petrobras directly.  See Decl. Matthew T. Peters, Ex. C, at 4:19–5:5, ECF No. 8-3.  If either bid materialized into an agreement, Subsea would have provided either Petrobras or its subcontractor deep-sea robotic services.  Id.  Because Subsea was not itself an ROV manufacturer, it entered into an agreement with Schilling in which Schilling agreed to manufacture two heavy-duty ROVs and two 9.5 ton launch and recovery systems ("LARS") (to deploy and retrieve the ROVS), for a total price of $7,884,421.  Id. at 5:5–6:15.

Ultimately Subsea lost out on its bids for agreements involving Petrobras.  Id. at 6:18–21.  After Subsea had paid Schilling nearly seven million dollars but before Subsea received the two ROVs, Schilling became concerned about Subsea's solvency and its ability to pay the remaining balance.  See Decl. Whalen ¶ 16, ECF No. 18.  Schilling demanded immediate payment or else it would deem the contract terminated because of Subsea's insolvency.  Decl. Jeffrey D. Palmer, Ex. A, ECF No. 6-2.  On September 5, 2013, Schilling notified Subsea that it was terminating the agreement.  Id., Ex. B, ECF No. 6-2.

Subsea filed a petition to compel arbitration in state court under the terms of the ROV agreement, and Schilling removed.  ECF No. 1.

///

///

///

///

1

2

**STANDARD**

3      Federal Rule of Civil Procedure 64 codifies the "long-settled federal law providing

4    that in all cases in federal court, whether or not removed from state court, state law is

5    incorporated to determine the availability of prejudgment remedies for the seizure of

6    person or property to secure satisfaction of the judgment ultimately entered."  Granny

7    Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda

8    Cnty., 415 U.S. 423, 436 n.10 (1974).

9      Under California law, "[a]ttachment is an ancillary or provisional remedy to aid in

10    the collection of a money demand by seizure of property in advance of trial and

11    judgment."  Kemp Bros. Constr., Inc. v. Titan Elec. Corp., 146 Cal.App.4th 1474, 1476

12    (2007) (citations and internal quotation marks omitted).  "Attachment is a harsh remedy

13    because it causes the defendant to lose control of his property before the plaintiff's claim

14    is adjudicated."  Martin v. Aboyan, 148 Cal. App. 3d 826, 831 (1983).  "Since California's

15    attachment law is purely statutory, it must be strictly construed."  VFS Fin., Inc. v. CHF

16    Express, LLC, 620 F. Supp. 2d 1092, 1095 (C.D. Cal. 2009).  Moreover, "[t]he moving

17    party has the burden of establishing grounds for an attachment order."  Id.

18

19

**ANALYSIS**

20

21      Both parties move for prejudgment attachment of the other's assets in this case in

22    which Plaintiff seeks an order compelling Defendant to arbitrate a contract dispute.  In

23    the arbitration context in addition to the usual requirements for provisional remedies, the

24    petitioner must also show the arbitration "award to which the [petitioner] may be entitled

25    may be rendered ineffectual without provisional relief," such as a prejudgment writ of

26    attachment.  Cal. Civ. Proc. Code § 12981.8(b).

27    ///

28    ///

1  California courts have held that the ineffectual-relief requirement is "'similar to irreparable

2  harm'" as these terms are used in the injunction context.  Cal. Retail Portfolio Fund

3  GmbH & Co. KG v. Hopkins Real Estate Grp. (California Retail), 193 Cal. App. 4th 849,

4  857 (2011) (quoting Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1394 (1989–1990

5  Reg. Sess.) May 16, 1989, p. 2).  Accordingly, the ineffectual-relief requirement may be

6  met if the petitioner shows there is a danger the respondent is insolvent.  Id. at 859.

7  Insolvency can be shown if the writ applicant can prove by a preponderance of the

8  evidence that the respondent "is unable to meet [its] obligations as they mature in the

9  ordinary course of business."  Id. at 859-60.

10      Unequivocal statements from a company's manager that the company is unable

11  to meet current obligations can support a finding that the business is insolvent, and meet

12  the "ineffectual relief" requirement, to warrant a prejudgment writ of attachment.  In

13  California Retail, the trial court granted the petitioner's application for writ of attachment

14  in connection with an arbitration proceeding, and the California Court of Appeal for the

15  Second District affirmed.  Id. at 852.  In its application for writ of attachment, the

16  petitioner argued an arbitration award "may be rendered ineffectual without provisional

17  relief" because the respondent was insolvent as evinced by a print-out of an email from

18  the respondent's chief financial officer that the petitioner attached to its application.  Id.

19  at 854.  In that email, the respondent company's manager stated unequivocally that "he

20  wanted to speak . . . about 'some concerns I have regarding [the respondent company's]

21  overall liquidity, and other matters,'" and expressed his concerns about respondent's

22  ability to meet current obligations.  Id.  On appeal, the court found these statements

23  constituted "compelling evidence that the [respondent company] was running out of

24  money and, if it was not already there, would soon be unable to pay its debts," even

25  though it "had never declared bankruptcy."  Id. at 860.  The Court of Appeal therefore

26  affirmed the trial court's issuance of the writ of attachment.  Id. at 863.

27  ///

28  ///

1      Here, neither party has produced sufficient competent evidence, let alone the

2  "compelling evidence" that existed in California Retail, that an arbitration award "may be

3  rendered ineffectual without" a writ of attachment.  Cal. Civ. Proc. Code § 12981.8(b).

4  First, Subsea has offered neither argument nor evidence that it will suffer irreparable

5  injury without a writ of attachment, and irreparable injury is an essential element under

6  California law to issue a writ of attachment in the arbitration context.  California Retail,

7  193 Cal. App. 4th at 860-63.  Accordingly, Subsea has not met its burden and its motion

8  for a writ of attachment is therefore denied.

9      Second, even though Schilling supports its application for a writ of attachment

10  with argument and evidence of irreparable injury, this evidence does not meet Schilling's

11  burden to establish grounds for an attachment order.  See VFS Fin., Inc., LLC, 620 F.

12  Supp. 2d at 1095.  Unlike California Retail, Schilling has not offered an unequivocal

13  statement from a Subsea manager that amounts to "compelling evidence that [Subsea]

14  was running out of money and, if it was not already there, would soon be unable to pay

15  its debts."  193 Cal. App. 4th at 860.  Schilling's evidence of Subsea's insolvency

16  includes a declaration from Paul Whalen, Schilling's Vice President, in which he

17  declares: "Subsea advised Schilling that Subsea was laying off staff because of delays

18  in finalizing [an underwater services] contract," Decl. Paul Whalen ¶ 16, ECF No. 18, and

19  that two employees of Subsea—Wander Almedia and Jose Duarte, Jr.—told Whalen

20  that the "assets of Subsea/RRC would be sold and that Wander and Jose would no

21  longer work for Subsea/RRC as of June 30, 2013."  Id. ¶ 17.  Subsea objects to this

22  evidence as speculation and hearsay.  ECF No. 25.  Further, Schilling attached to its writ

23  application a few grainy photographs and asserts these photographs evince that

24  Subsea's offices in Macae, Brazil have been closed and are listed for sale.  Decl.

25  Whalen, Ex. F., ECF No. 18-2, at 26–29.

26  ///

27  ///

28  ///

1    Even assuming Schilling's proffered evidence of Subsea's alleged insolvency is

2    admissible,[2] at most, Schillings submission amounts to some evidence that Subsea may

3    have been insolvent—insufficient for Schilling to meet its burden.  Moreover, Subsea

4    submits declarations contradicting Schilling's evidence and tending to establish that

5    Subsea is in fact solvent.

6        Specifically, Wander Luiz Ferreira de Almedia, Subsea's Director, contradicts

7    Whalen's declaration:

8            Mr. Wahlen's statement is inaccurate.  When I spoke to Mr.
             Whalen in May of this year, I advised him that Mr. Duarte and
9            I would no longer be serving as officers of Subsea.  I,
             however, still remain a member of [Subsea's] Board of
10           Directors.    Additionally   Mr.  Duarte  and  I  are  both
             shareholders . . . .    Schilling's claims about the risk of
11           insolvency  are inaccurate and unfounded.  [Subsea] remains
             fully operational, as it always has.
12

13   Decl. Wander Luiz Ferriera de Almedia ¶¶ 1, 7–8, ECF No. 24.  Director Ferreira goes

14   on to detail Subsea's assets and avers "there is no basis for believing that Subsea . . .

15   will become or has become insolvent."  Id. ¶ 8.  Further, regarding Schilling's

16   photographs purportedly evincing that Subsea has "closed its doors," Ferreira declares

17   Subsea has indeed closed one of its operational bases in Brazil because it "had no

18   further need for that particular location"; however, he explains, the "listing for sale of this

19   location does not demonstrate that [Subsea] is ceasing operation."  Id. ¶ 9.

20       In light of the lack of compelling evidence of Subsea's insolvency, considered

21   together with Subsea's proffered evidence which tends to show Subsea remains solvent,

22   the Court finds that Schilling's evidence is insufficient to meet its burden to show an

23   arbitration award would "be rendered ineffectual" unless the Court issues a prejudgment

24   writ of attachment.  Cal. Civ. Proc. Code § 12981.8(b).  Accordingly, Schilling's motion

25   for a writ of attachment is denied.

26   ///

27

28        [2] "[I]n light of the . . . resolution of" Schilling's motion for writ of attachment below, Subsea's
     evidentiary objections "need not and will not [be] address[ed]."  Gibson v. Cnty. of Riverside, 181 F. Supp.
     2d 1057, 1080 n.20 (C.D. Cal. 2002).

6

1

**CONCLUSION**

2

3          Therefore, IT IS HEREBY ORDERED that the parties' cross-motions for

4    Prejudgment Writs of Attachment (ECF Nos. 12, 17) are DENIED.

5          IT IS SO ORDERED.

6    Dated:  December 6, 2013

7

8

9                                    _____
                                     MORRISON C. ENGLAND, JR., CHIEF JUDGE
10                                   UNITED STATES DISTRICT COURT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28